IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BENJAMIN MCMILLAN,              :
                                :
              Petitioner,       :
                                :
       v.                       :    Civ. Act. No. 15-1064-LPS
                                :
DANA METZGER, Warden, and       :
ATTORNEY GENERAL OF THE         :
STATE OF DELAWARE,              :
                                :
              Respondents.[1]   :

---

Benjamin McMillan. *Pro Se* Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

March 25, 2019
Wilmington, Delaware

---

[1]Warden Dana Metzger replaced former Warden David Pierce, an original party to the case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I. INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed by Petitioner Benjamin A. McMillan ("Petitioner"). (D.I. 1; D.I. 3; D.I 11; D.I. 12; D.I. 15; D.I. 16) The State filed an Answer in Opposition (D.I. 25) and Petitioner filed a Traverse (D.I. 32). For the reasons discussed, the Court will dismiss the Petition as time-barred under the limitations period prescribed in 28 U.S.C. § 2244.

## II. BACKGROUND

On September 5, 2006, Petitioner was indicted for trafficking in cocaine, possession with intent to deliver a narcotic controlled substance, maintaining a vehicle for keeping controlled substances, tampering with physical evidence, possession of drug paraphernalia, resisting arrest, and possession of a non-narcotic schedule I controlled substance. (D.I. 25 at 1) On March 21, 2007, Petitioner pled guilty to trafficking in cocaine and tampering with physical evidence, in exchange for which the State entered a *nolle prosequi* as to the remaining charges as well as a pending violation of probation in another case. (D.I. 25 at 1; *see also McMillan v. State*, 115 A.3d 1215 (Table), 2015 WL 3444673, at *1 (Del. May 27, 2015)) The Superior Court immediately sentenced Petitioner as a habitual offender to eighteen years at Level V for trafficking in cocaine, and to two years at Level V, suspended for decreasing levels of supervision, for tampering with physical evidence. *See McMillan*, 2015 WL 3444673, at *1. Petitioner filed a timely notice of appeal, but voluntarily withdrew it on April 19, 2007. (D.I. 28-1; D.I. 28-14 at 2)

On May 22, 2007, Petitioner filed a motion for sentence modification, which the Superior Court denied on June 5, 2007. (D.I. 28-14 at 2-3) Petitioner filed a second motion for sentence modification on July 13, 2009, which was denied on August, 7, 2009, and then filed a third motion

to modify sentence on September 3, 2009, which was denied on October 22, 2009. (D.I. 28-14 at 3) Petitioner did not appeal any of those decisions.

On April 12, 2010, Petitioner filed his first *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 25 at 2) The Superior Court denied the motion on May 5, 2010, and the Delaware Supreme Court affirmed that decision on September 7, 2010. *See McMillan v. State*, 3 A.3d 1098 (Table), 2010 WL 3490181, at *1 (Del. Sept. 7, 2010).

Petitioner filed a motion for sentence reduction on January 24, 2011. (D.I. 28-14 at 4) The Superior Court denied the motion on August 16, 2011, and the Delaware Supreme Court affirmed that decision on February 21, 2012. *Id.*; *see also McMillan v. State*, 38 A.3d 1255 (Table), 2012 WL 556467, at *1 (Del. Feb. 21, 2012). On May 8, 2013, Petitioner filed another motion for correction of sentence, which the Superior Court denied on September 3, 2013. Petitioner did not appeal that decision. (D.I. 25 at 3)

Petitioner filed his second Rule 61 motion on September 15, 2014. (D.I. 25 at 3) The Superior Court denied the motion on March 3, 2015, and the Delaware Supreme Court affirmed that decision on May 27, 2015. *See McMillan v. State*, 115 A.3d 1215 (Table), 2015 WL 3444673, at *2 (Del. May 27, 2105).

The first document Petitioner filed in this case – a Memorandum of Law – is dated November 2015. (D.I. 1) During the months following that filing, Petitioner filed a form Petition (D.I. 3), an Amended Petition (D.I. 12), and three amendments (D.I. 11; D. I. 15; D.I. 16). The claims asserted in the Amended Petition (D.I. 12) and amendments (D.I. 11; D.I. 15; D.I. 16) (hereinafter referred to as "Petition") assert all of Petitioner's grounds for relief (D.I 21), which consist of the following four Claims: (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963)

2

during the plea process by (a) not disclosing the possibility the drug evidence in his case may have been tampered with while held at the OCME in 2006-2007; (b) not disclosing the drug weight discrepancies between the lab and police reports; and (c) not disclosing that OCME employee Farnham Daneshgar may have left the OCME in 1990 amid allegations that he was dry labbing and that he was re-hired in 2006; (2) Petitioner's guilty plea was rendered involuntary because of the State's failure to provide the aforementioned *Brady* material prior to the entry of his guilty plea; (3) the State violated Petitioner's due process rights because the Medical Examiner was unreliable and lacked credibility; and (4) defense counsel provided ineffective assistance (a) by failing to share the police reports and lab reports with Petitioner which, when compared, reveal a drug weight discrepancy; (b) by failing to investigate Petitioner's case; (c) by failing to challenge the sufficiency of the drug evidence in a motion to suppress; and (d) by coercing Petitioner into pleading guilty because Petitioner had failed to pay the attorney's fee.

### III. OCME CRIMINAL INVESTIGATON

As summarized by the Delaware Supreme Court, the relevant information regarding the mishandling of evidence at the OCME is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME. The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence

3

> they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015). According to the Delaware Department of Justice's ("DOJ") preliminary Report in June 2014, the "[s]ystemic operational failings of the OCME resulted in an environment in which drug evidence could be [and was] lost, stolen or altered, thereby negatively impacting the integrity of many prosecutions between 2010 and 2013." *State v. Rivera*, 2014 WL 3894274, at *1 n.4 (Del. Super. Ct. Aug. 11, 2014). As a result of the 2014 investigation/audit of drug evidence at the OCME, the Delaware DOJ notified defendants in both closed and open criminal cases if it determined that the drug evidence in their cases may have been affected by the evidence mishandling at the OCME during the relevant period, namely from 2010 to February 2014. *See, e.g., Brown v. State*, 108 A.3d 1201, 1205 (Del. 2015) ("On June 5, 2015, [] the DOJ sent a letter to Brown's counsel stating that one or more individuals in the chain of custody for his case was indicted on criminal charges resulting from the OCME investigation.").

## IV.    ONE YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 23, 1996. 28 U.S.C. § 2244(d)(1). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

4

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner's § 2254 Petition, filed in 2015, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not assert, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B) or (C). However, Petitioner's argument in Claim One that the State violated *Brady* by failing to disclose prior to 2014 the possibility that the drug evidence in his case may have been tampered with while being tested and/or held at the OCME in 2006-2007, along with the State's failure to disclose the fact that OCME employee Farnham Daneshgar allegedly left the OCME in 1990 amid allegations of drylabbing but was re-hired in 2006, could be construed as an attempt to establish the 2014 revelation of the OCME scandal as being a "newly discovered" factual predicate triggering a later starting date of the limitations period under § 2244(d)(1)(D). To the extent subsection (D) is implicated, the Court is not persuaded. Petitioner's case was not one of the cases the DOJ identified as possibly being affected by the evidence mishandling at the OCME. Additionally, nothing in the record supports Petitioner's speculative assertion that the drug evidence in his case may have been tampered with while it was being held or tested at the OCME in 2006-2007. Notably, the fact that the OCME mishandled evidence in some criminal cases between 2010 and February 2014 does

support Petitioner's speculation that the evidence in his case may have been tampered with at the OCME in 2006-2007. Thus, the 2014 revelation of the OCME drug evidence scandal does not constitute a newly discovered factual predicate triggering a later starting date under § 2244(d)(1)(D).

Based on the foregoing, the one-year period of limitations for all of the instant Claims began to run when Petitioner's conviction became final under § 2244(d)(1)(A). Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on March 21, 2007. Petitioner filed a notice of appeal, but he voluntarily withdrew the appeal on April 19, 2007. The Court views Petitioner's act of voluntarily dismissing his appeal as though Petitioner did not file an appeal, and will therefore include the thirty-day appeal period in determining the date of finality for his conviction.[2] As such, Petitioner's judgment of conviction became final on April 21, 2007.

Applying the one-year limitations period to that date, Petitioner had until April 21, 2008 to timely file his Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method). Petitioner filed the instant Petition on November 15, 2015,[3] approximately

---

[2] In contrast, the State contends that Petitioner's conviction became final on the day he withdrew the appeal – April 19, 2007. (D.I. 25 at 5)

[3] Pursuant to the prison mailbox rule, the Court adopts the date on the original Memorandum of Law (D.I. 1) – November 15, 2015 – as the date of filing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003).

6

seven and one-half years after the expiration of the limitations period. Thus, his Petition is untimely, unless the limitations period can be statutorily or equitably tolled. *See Jones*, 195 F.3d at 158. The Court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Petitioner filed his first motion for sentence modification on May 22, 2007. The Superior Court denied the motion on June 4, 2007, and Petitioner did not appeal that decision. Consequently, the motion tolled the limitations period from May 22, 2007 through July 3, 2007, which includes the thirty-day appeal period.

When Petitioner filed the aforementioned motion for sentence modification, thirty-one days of AEDPA's limitations had already expired. Once the tolling from the motion ended on July 3, 2007, the limitations clock started to run again on July 4, 2007, and ran the remaining 334 days without interruption until the limitations period expired on June 2, 2008. Petitioner's subsequent motions to modify/reduce sentence and his Rule 61 motions do not have any statutory tolling effect, because they were filed after the expiration of the limitations period. For these reasons, the Petition is time-barred, unless equitable tolling is available.

7

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *See id.* As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 400 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

To the extent Petitioner attempts to trigger equitable tolling, and therefore delay the start of the limitations period until February 2014, by using the State's failure to provide information regarding Farnham Daneshgar's alleged departure from the OCME in 1990 during the discovery phase of his case, the attempt is unavailing. The "prosecution is only obligated to disclose information known to others acting on the government's behalf in a particular case." *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005). Daneshgar's alleged departure from the OCME in 1990 was not related to Petitioner's criminal proceedings in 2006-2007, and any allegations regarding Daneshgar's drylabbing in 1990 does not establish that the State had any evidence or knowledge of drylabbing at the time of Petitioner's guilty plea in 2007. Additionally, Petitioner has failed to demonstrate that he exercised reasonable diligence in pursuing his rights related to the instant argument regarding Daneshgar's employment history. Petitioner had all the information he needed

8

to file the instant argument when the DOJ issued its Report in June 2014, and he actually presented the argument in the Rule 61 motion he filed in the Superior Court in September 2014. Yet, Petitioner does not explain why he waited until November 2015 to present the argument to this Court. Thus, Petitioner's argument regarding State's failure to investigate and/or disclose the information regarding Daneshgar's alleged 1990 departure from the OCME does not warrant equitable tolling.

Petitioner's complaint that the State did not disclose the discrepancies in the drug weights listed in the police and lab reports also fails to warrant equitable tolling. Petitioner had access to both the lab and police reports before he pled guilty in 2007, which means he also had access to any drug weight discrepancy listed in those reports. Consequently, he could have presented this portion of Claim One prior to learning about the OCME evidence mishandling scandal, which was also before he filed the instant Petition in November 2015.

To the extent Petitioner's assertion of actual innocence (D.I. 32 at 24-32) should be viewed as an attempt to trigger equitable tolling, it is not successful. In *McQuiggin v. Perkins*, 569 U.S. 383, 386, 401 (2013), the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. However, the *McQuiggin* Court cautioned that "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Here, Petitioner's bare-boned and unsupported statement of actual innocence does not warrant equitable

9

tolling because it does not assert or constitute new reliable factual evidence of his actual innocence as required by *Schlup*.

Finally, to the extent Petitioner's untimely filing was the result of his own miscalculation of the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).

For all of these reasons, the Court concludes that equitable tolling is not available on the facts presented by Petitioner. Accordingly, the Court will dismiss the instant Petition as time-barred.[4]

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A federal court denying a habeas petition on procedural grounds without reaching the underlying constitutional claims is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas Petition does not warrant relief because it is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

---

[4] Given this conclusion, the Court will not address the State's alternate reason for dismissing the Petition.

10

## VI. CONCLUSION

For the reasons discussed, Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.